UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

K<small>RIS</small> K<small>EYES</small>,

    Petitioner,    Case No. 2:20-cv-5

v.            Honorable Paul L. Maloney

C<small>ATHERINE</small> B<small>AUMAN</small>,

    Respondent.
_____/

## **OPINION**

    This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.      **Factual allegations**

Petitioner Kris Keyes is incarcerated with the Michigan Department of Corrections at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Following a jury trial in the Muskegon County Circuit Court, Petitioner was convicted of assault with intent to do great bodily harm less than murder (AGBH), in violation of Mich. Comp. Laws § 750.84; being a felon in possession of a firearm (FIP), in violation of Mich. Comp. Laws § 750.224f; and two counts of possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On August 16, 2016, the court sentenced Petitioner as a second habitual offender, Mich. Comp. Laws § 769.10, to prison terms of 6 years, 8 months to 15 years for the AGBH conviction, and 2 to 7 years for the FIP conviction, both to be served consecutively to concurrent sentences of 2 years for the felony-firearm convictions.

On March 10, 2020, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on January 3, 2020. (Pet., ECF No. 1, PageID.14.)

The petition raises two grounds for relief, as follows:

I.      PETITIONER'S CONVICTIONS MUST BE VACATED BECAUSE THERE IS INSUFFICIENT EVIDENCE TO SUSTAIN BEYOND A REASONABLE DOUBT THE CONCLUSION THAT HE WAS THE INDIVIDUAL WHO SHOT CORNELIUS IVY; IN VIOLATION OF PETITIONER'S RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS.

II.     A NEW TRIAL IS WARRANTED WHERE THE PROSECUTION THREATENED AND INTIMIDATED A WITNESS; VIOLATING PETITIONER'S RIGHTS TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT.

(ECF No. 1-3, PageID.20, 28.)

The following facts are taken from the opinion of the Michigan Court of Appeals, which resolved both the appeal of Petitioner's convictions and those of his co-defendant, Bobby Keyes:

> On December 20, 2015, Demarcus Jones broke up with his girlfriend Machelle Wirick and moved back into the home of his mother Darlene Jones. Later that day, Machelle came to the home to argue with Demarcus about a television. Machelle's uncle, defendant Bobby Keyes, also came to calm Machelle down, and the two eventually left. Machelle later called Demarcus and accused him of taking some marijuana from her purse, which he denied. At about 9:30 p.m. several males, two of whom were identified as Bobby and Kris, entered the enclosed porch door where Demarcus and his cousin Cornelius Ivy were sitting. Bobby confronted Demarcus who admittedly had been drinking all day about the marijuana. Bobby dragged Demarcus from the porch and hit him with a hard object that Demarcus stated felt like a gun. Bobby then shot at Demarcus three times.
>
> Demarcus initially identified Bobby out of photo lineup and told Detective Steven Winston that Bobby was the one who shot him. Pre-trial, he told a defense investigator that he was mistaken about who shot him. At trial, Demarcus confirmed on direct examination that he was sure about the identity of his shooter, but later appeared to recant his identification, stating:
>
>> *Q.* And why is it you think it was Bobby as opposed to the third guy?
>>
>> *A.* Cause we had an incident earlier, I guess.
>>
>> *Q.* So could it have been the third guy?
>>
>> *A.* I don't know. I don't, I can't even tell you.
>>
>> *Q.* You don't knot [sic] if it could have or not have been
>>
>> *A.* No.
>>
>> *Q.* —or you don't know if it was?
>>
>> *A.* I don't know if it was. I just think it was Bobby that's all.
>>
>> *Q.* Right. But my question is could it have been? Is there a possibility that it could've been that third guy?
>>
>> *A.* I don't think so.
>>
>> *Q.* You don't think so? So, why is that you informed my investigator that you didn't think it was Bobby?

3

> *A.* I mean, I was just going back and forth. I was just weighing my options out. Most people saying it was and this and that. I'd been drinking all day so I'm just going back and forth with 'em.
>
> *Q.* OK. So you said you're going back and forth. Most people telling you it was?
>
> *A.* Uh huh. I saying it was too [sic] cause of the incident we had earlier.

Demarcus testified further that he was forced to be in court by subpoena and that he was threatened he "would be charged with perjury and . . . a probation violation." The court excused the jury and conducted a hearing on the issue of whether Demarcus's testimony was the product of coercion. Demarcus told the court that the Friday before he was scheduled to testify, his probation agent called him and told him he could be charged with perjury. Demarcus went to his agent's office where he eventually met with the prosecutor and Detectives Winston and Maat, and told them that he did not want to testify. He again was informed that if he perjured himself, the charge would be a violation of his probation. Demarcus testified, "I thought it was Bobby so I can't be perjuring myself. I thought it was Bobby and then I told her I thought anybody else saying it was, it was him too . . . . But from the gate I told him it was Bobby." Demarcus testified that no one ever told him what to say, just to tell the truth. The jury returned and the following testimony was elicited by Bobby's attorney:

> *Q.* Prior to appearing here for your testimony today you had other meetings with the detective and prosecutor[']s office, correct?
>
> *A.* Yes, sir.
>
> *Q.* And in those other meetings you were informed by one of the assistant prosecutors that if your testimony changed you could get perjury charges?
>
> *A.* Yes, sir.
>
> *Q.* And they informed you that they had just had someone sentenced, Michigan Mel sentenced to nine years in prison?
>
> *A.* No, I guess it's some, some dude who's involved in the case and changed (undistinguishable).
>
> *Q.* Oh, that was the name of the case? Michigan Mel case?
>
> *A.* Yeah.
>
> *Q.* And when his testimony changed?
>
> *A.* They gave him nine years . . . .

4

Two other persons identified both Bobby and Kris as assailants. The first was Cornelius, the other victim, who had difficulty remembering the details of the evening of December 20, 2015, because he was shot in the top of his head that night and thereafter, diagnosed with post-concussion syndrome. The court declared that Cornelius's memory loss was valid, that he was unavailable under MRE 804, and that his preliminary exam transcript testimony would be read to the jurors in response to the prosecutor's motion at trial that Cornelius be declared unavailable. The salient points of the preliminary examination testimony were that Cornelius made an in-court identification of Kris as his assailant and as one of the men with Bobby on the day of the assault. Cornelius had also identified Kris from a photo lineup. The second person who identified both defendants as assailants was Demarcus's mother, who was sitting on her couch and watching through a glass door to the porch when four men approached the front porch where Demarcus and Cornelius were sitting. Darlene identified both defendants in court as two of the four men and testified that she had seen them both before from growing up in the same neighborhood. She heard Bobby tell Kris to get Cornelius and saw Kris hold Cornelius down as Bobby dragged Demarcus out of his chair and off the porch. She heard three or four gunshots and saw Cornelius enter the house with blood all over his face. She found Demarcus outside lying on the ground bleeding. She testified that while Demarcus was on the ground, he told her that Bobby shot him.[1] She admitted that she would not name one of the four men because she knew that person was on parole and she did not want him to get in trouble however, she testified that if that man had been the one who shot her son, she would not be withholding his name.

[1] This statement was challenged as hearsay and overruled by the court because it found the statement to be an excited utterance. Darlene also testified that Demarcus said "Bud" shot him, but identified Bobby as being Bud. Further, there is no challenge to the reference to Bud as being any other person but defendant Bobby.

*People v. Keyes*, No. 334708, 2017 WL 5759995, at \*1-2 (Mich. Ct. App. Nov. 28, 2017).

Petitioner appealed his convictions to the Michigan Court of Appeals. In the brief filed by counsel, Petitioner raised the issues he presents in the instant petition as well as a third issue, which he withdrew. The Michigan Court of Appeals denied both claims for lack of merit in an unpublished opinion issued on November 28, 2017. *Id.* Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same two grounds for relief. The supreme court denied leave to appeal on October 30, 2018.

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court

adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**III. Discussion**

   **A.     Ground I: Sufficiency of the Evidence**

In his first ground for relief, Petitioner argues that there is insufficient evidence to prove that he shot Cornelius Ivy. Consequently, he contends that he was convicted in violation of his Fifth and Fourteenth Amendment rights.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners

who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals examined Petitioner's claim:

> "In challenges to the sufficiency of the evidence, this Court reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v. Roper*, 286 Mich. App. 77, 83; 777 N.W.2d 483 (2009). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v. Carines*, 460 Mich. 750, 757; 597 N.W.2d 130 (1999). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v. Hardiman*, 466 Mich. 417, 428; 646 N.W.2d 158 (2002). "[W]e must resolve all conflicts in favor of the prosecution." *People v. Terry*, 224 Mich. App. 447, 452; 569 N.W.2d 641 (1997).
>
> There is clearly sufficient evidence to support the jury's verdict in this case. We agree that there was testimony that was inconsistent and which challenged the veracity of each prosecution witness . . . . Most importantly, the jury was made aware of the witnesses' inconsistencies, potentially impaired observations, and other testimonial weaknesses, and elected to find the testimony regarding the identity and activity of both defendants to be credible.

*Keyes*, 2017 WL 5759995, at *3.

Although the court of appeals cited only Michigan cases, the court's analysis applied the *Jackson* standard. Consequently, the state courts applied the Supreme Court standard appropriate for analyzing the sufficiency of the evidence.

In short, Petitioner's sufficiency challenge asks the Court to do what it cannot: weigh the credibility of the witnesses. *See Herrera*, 506 U.S. at 401-02. The court of appeals opinion pointed to multiple witnesses who testified about the events leading up to, during, and after the shooting. *Keyes*, 2017 WL 5759995, at *1-3. Indeed, Petitioner acknowledges that the prosecution presented "some evidence to show that Petitioner shot Cornelius Ivy, namely, the identification testimony of Darlene Jones, Demarcus Jones and Cornelius Ivy identifying Petitioner as one of the assailants." (ECF No. 1-3, PageID.26.) Yet, he contends that "their

9

testimony . . . is highly suspect." (*Id.*) Petitioner asserts that "any testimony implicating either of the Keyes brothers is open to question," and points to various reasons each witness' testimony may have been inaccurate. (*Id.*) As the court of appeals noted, the jury found Petitioner guilty notwithstanding "the witnesses' inconsistencies, potentially impaired observations, and other testimonial weaknesses." *Keyes*, 2017 WL 5759995, at *3.

Petitioner does not challenge any facts described in state court's opinion to support the convictions. He merely argues that the jury should have reached a different conclusion. He invites this Court to view the evidence in a light favorable to him and asks the Court to decide the issue of witness credibility differently than the jury obviously did. It is Petitioner's argument that represents an unreasonable applications of *Jackson*. The state appellate court's sufficiency determination was entirely consistent with *Jackson*.

Thus, the jury's determination that Petitioner shot Cornelius Ivy was supported by ample evidence. Accordingly, Petitioner has failed to overcome the double deference owed to that determination on habeas review, and the Court will deny his first ground for habeas relief.

### B. Ground II: Witness Coercion

In his second ground for relief, Petitioner argues that the prosecution coerced a victim into testifying against Petitioner. The prosecution allegedly threatened the anticipated witness with "a probation violation charge or perjury if he did not testify at trial." (ECF No. 1-3, PageID.28.) Consequently, Petitioner contends that he was convicted in violation of his Fourteenth Amendment rights.

#### 1. Prosecutorial Misconduct

Petitioner arguably alleges that the prosecution committed misconduct by threatening to charge a witness with perjury. In an exceptional case, general misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474

(6th Cir. 1989). However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). Moreover, "'the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing . . . is necessarily imprecise.'" *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015) (quoting *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)). A federal court sitting in habeas review "cannot set aside a state court's conclusion on a prosecutorial-misconduct claim unless a petitioner cites to other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Id.* (citing *Parker v. Matthews*, 567 U.S. 37, 47-49 (2012)).

The Michigan Court of Appeals confronted Petitioner's claim that the prosecution or its agents intimidated the witness into testifying. Notably, as Petitioner admits, "none of the prosecution['s] agents 'told' [the witness] 'what to say' or to say anything other than 'the truth.'" (ECF No. 1-3, PageID.28.) The court of appeals rejected Petitioner's argument, determining that "warning of the consequences of perjury was not inappropriate" after the victim "wavered as to his identification" of the individual who shot him. *Keyes*, 2017 WL 5759995, at *4. To be sure, the court expressed concern with the "emphatic manner" of the prosecution's warnings. *Id.* The cautionary tale the prosecution told the witness of the "length of sentence allegedly given another parole violator" for perjury troubled the court. *Id.* However, it concluded that "the recitation of

11

objectively true information, that perjury is a violation of parole" does not constitute witness intimidation. *Id.*

The United States Supreme Court has never held that warning a prosecution's witness of the consequences of perjury violates a defendant's due process rights. Petitioner does not identify, and the Court is not aware of, any Supreme Court precedent otherwise indicating that the court of appeals' decision was unreasonable. *See Trimble*, 804 F.3d at 783. Indeed, the state court's decision appears entirely reasonable. Accordingly, Petitioner fails to establish a claim of prosecutorial misconduct.

### 2. Admission of Evidence

In the alternative, Petitioner arguably challenges the admission of the witness' testimony as evidence against him. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

Moreover, the Michigan Court of Appeals provided ample reason why Petitioner was not prejudiced by the admission of the witness' testimony. The issue of the prosecution's purported intimidation was raised before the jury through testimony that described the prosecution's efforts to motivate the witness to testify. In addition, the alleged intimidation concerned the witness' identification of Petitioner's brother as a shooter, not Petitioner. Likewise, the witness' "most impactful statement of identification . . . was made immediately after being shot," *Keyes*, 2017 WL 5759995, at *4, and introduced as an excited utterance during the testimony of the witness' mother, *see Keyes*, 2017 WL 5759995, at *2 n.1.

Under these circumstances, the state-court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d); *see also Sanders*, 221 F.3d at 860. Accordingly, the Court will deny Petitioner's second ground for habeas relief.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   March 26, 2020                         /s/ Paul L. Maloney
                                                                               Paul L. Maloney
                                                                               United States District Judge